**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 7 |
|  | ) | Case No. 23-10737-CJP |
| THOMAS W. ARENA, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

**MEMORANDUM OF DECISION AND ORDER**
**ON THE DEBTOR'S OBJECTION TO CLAIM**

Chapter 7 debtor, Thomas W. Arena (the "Debtor") objects [ECF No. 32] (the

"Objection") to the amended proof of claim [Claim No. 2-2] (the "Claim") filed by Robert W.

Driscoll and Laina C. Driscoll, Individually and as Trustees of the Quissett Partners Trust[1]

(collectively, the "Driscolls").  I must decide the issue of whether the Claim may include post-

judgment interest and costs of collection, including post-judgment attorneys' fees and expenses.

After considering the Objection and the Debtor's Supplemental Reply Brief [ECF No. 40] in

support thereof, the Driscolls' Response [ECF No. 35] and Supplemental Response [ECF No.

41], the arguments of counsel at a hearing, and the entire record in this case, I will sustain the

Objection as set out below.

I.      Background

On September 11, 2023, the Driscolls filed an initial secured claim in the amount of

$612,252.13 [Claim No. 2-1].  The Driscolls asserted the claim was secured by "Real Estate"

perfected by a "Writ of Attachment" and attached a "Statement of Claim" explaining that the

basis for the claim was "amounts due under certain promissory notes and orders and judgments

---

[1] The Claim references "Trustees of the Quissett Partners Trust."   In the briefing and the attachment to the Claim, the claimants are identified as "Trustees of the Quissett Partners Nominee Trust."  These appear to be the same trust and the discrepancy is irrelevant for purposes of this Memorandum of Decision and Order.

in certain actions" before the United States District Court for the District of Massachusetts captioned as *Arena, et al. v. Driscoll, et al.*, Civ. A. No. 16-cv-11562-DLC (the "District Court Action") and the Pennsylvania Court of Common Pleas in a case captioned as *Driscoll v. Arena, et al.*, Nos. 03286, 03288, and 03293 (the "Pennsylvania Action").  The Statement of Claim further provided that the amounts comprising the $612,252.13 claim consisted of principal of $335,569.57 and interest of $276,682.56 through May 9, 2023.  On February 28, 2024, the Driscolls amended their claim, increasing the secured amount to $1,276,374.82.[2]  The Claim states that it is secured by "Real Estate" and that the basis for perfection of the Claim is a "Judgment Lien/Writ of Attachment."  The Claim states that the value of the property securing the Claim is $2,400,000.

The "Statement of Amended Claim" annexed to the claim further provides that, as of the Petition Date, the principal and interest "due under the Notes" was $615,892.69, which consisted of principal of $335,569.57 and interest of $280,323.12.  In addition to the principal and interest, the Statement of Amended Claim includes attorneys' fees and costs of $660,482.13, as of January 31, 2024, incurred as "reasonable costs of collection" of the $183,861 promissory note.

It is apparent from the record that these parties have had a long history of disputes and litigation.  In 2004, the Debtor and his brother John (together, the "Arenas") proposed to Robert Driscoll that they jointly purchase and develop a house and three cottages in Nantucket, Massachusetts (the "Project").  Driscoll agreed to lend each of the Arenas $183,861 to contribute to the Project, and the Debtor and his brother were each to have a 25% interest in the Project.  On March 24, 2005, each of the Arenas executed a promissory note payable to Robert Driscoll in the

---

[2] The Claim appears to include two Official Form 410 filings, each with slightly different claim amounts in Part 2.7, one of which is signed by counsel and the other by the claimant.  Given the discrepancy, I reference the secured claim amount calculated in the Statement of Amended Claim attached to the Claim.

2

amount of $183,861.  A copy of the promissory note executed by the Debtor in favor of Driscoll is attached to the Objection as Exhibit B (the "Promissory Note").  When the note was not repaid, litigation followed on several fronts.

In 2016, Driscoll commenced the Pennsylvania Action to collect on the Promissory Note and sought judgment, relying on a "confession of judgment" provision in the Promissory Note. Ultimately, the Pennsylvania Action resulted in a judgment in favor of Robert Driscoll against the Debtor after an appeals court determined that the "confession of judgment" should be enforced in the amount of $335,569.57 (the "Pennsylvania Judgment").  *See Driscoll v. Arena*, 213 A.3d 253, 256-57, 260-61 (Pa. Super. Ct. 2019) (holding that challenge to the confessed judgment was untimely).

Before final judgment in the Pennsylvania Action, the Arenas commenced the District Court Action, where they sought to establish a constructive trust over the Project and obtain a declaration regarding their ownership interests in the Project.  While the District Court Action was pending, the Project's real estate was sold, and the District Court ordered that the net proceeds of the sale, after payment of usual and customary real estate conveyance costs and lien payoffs, be deposited with the Clerk of the District Court pending further order of the Court.  In 2022, after additional litigation and a partial release from escrow, the District Court entered summary judgment in favor of the Driscolls, giving full faith and credit to the Pennsylvania Judgment.  *Arena v. Driscoll*, 642 F. Supp. 3d 190, 196 (D. Mass. 2022).  The details of proceedings after judgment are set out in the Driscolls' Response, but ultimately the Driscolls were paid the amounts from escrow, which amounts were applied to reduce the Debtor's outstanding indebtedness under the Pennsylvania Judgment.

In addition to the District Court Action, on November 1, 2021, Robert Driscoll filed an action in the Nantucket District Court Department of the Massachusetts Trial Court (Case No. 2188FJ000001) (the "Nantucket Enforcement Action") to enforce the Pennsylvania Judgment. That court entered judgment in favor of Robert Driscoll and, on February 14, 2022, issued an execution against the Debtor in the total amount of $566,615.96, which included the amount of the Pennsylvania Judgment ($335,569.57), plus interest from the date that the Pennsylvania Judgment was entered (May 25, 2016) to the date of the Execution at an annual rate of 12% ($230,851.39), and post judgment costs of $195.00.  Driscoll caused the Execution issued by the Nantucket District Court to be recorded on March 14, 2023, in the Nantucket County Registry of Deeds at Book 1931, Page 142, within 90 days of the Petition Date.

The recited facts are not contested in any material way.  The Objection centers on legal fees and costs claimed for periods after entry of the Pennsylvania Judgment. "The Debtor . . . requests that his objection to Amended Claim 2-2 be sustained and that the claim amount be reduced be reduced by the amount of all attorneys['] fees, sought, $660,482.13, which are not included in the Pennsylvania Judgment and the subsequent Execution issued by the Nantucket District Court." Obj., ¶ 39.  Alternatively, if this Court rules that post-judgment attorneys' fees and costs are properly asserted in the Claim, the Debtor objects to the reasonableness of those fees and costs, which will require an evidentiary hearing.

II.      Legal Standards and Analysis

The parties have focused their briefing and arguments on whether Pennsylvania law permits a claim for attorneys' fees and costs that have accrued after entry of the Pennsylvania Judgment as asserted in the Amended Claim.  Because no party has argued otherwise, I will

apply Pennsylvania law of merger,[3] with respect to which the Third Circuit Court of Appeals has

stated:

> "It is elementary that judgment settles everything involved in the right to recover,
> not only all matters that were raised, but those which might have been raised. The
> cause of action is merged in the judgment which then evidences a new obligation."
> *Lance v. Mann*, 360 Pa. 26, 60 A.2d 35, 36 (1948) (citations omitted). The doctrine
> of merger of judgments thus provides that the terms of a mortgage are merged into
> a foreclosure judgment and thereafter no longer provide the basis for determining
> the obligations of the parties. *In re Presque Isle Apartments*, 112 B.R. 744, 747
> (Bankr. W.D. Pa. 1990); *see In re Herbert*, 86 B.R. 433, 436 (Bankr. E.D. Pa. 1988)
> ("The Debtor is, in our view, correct in her assertion that '[t]he mortgage is merged
> in a judgment entered in a mortgage foreclosure action' in Pennsylvania.") (quoting
> 25 P.L.E. 85 (1960); citing *Murray v. Weigle*, 118 Pa. 159, 11 A. 781, 782 (1888);
> *Hartman v. Ogborn*, 54 Pa. 120, 122–23 (1867)); *see also In re Roach*, 824 F.2d
> 1370, 1377 (3d Cir. 1987) ("In New Jersey, as in many states, the mortgage is
> merged into the final judgment of foreclosure and the mortgage contract is
> extinguished. As a result of this merger, there is no longer a mortgage . . . .")
> (citations omitted).

*In re Stendardo*, 991 F.2d 1089, 1094–95 (3d Cir. 1993), as amended (June 21, 1993).

Pennsylvania law recognizes an exception to the merger doctrine where the parties have

clearly and unambiguously provided in a contract that certain obligations will survive entry of a

judgment.  *See id.* at 1095 (collecting cases); *see also EMC Mortg., LLC v. Biddle*, 114 A.3d

1057, 1068 (Pa. Super. Ct. 2015) (post-foreclosure judgment attorneys' fees allowed where

security instrument provided that the creditor was "entitled to collect all expenses incurred in

pursuing the remedies [of a foreclosure action], including, but not limited to, attorneys' fees and

costs of title evidence.").  On post-judgment motion of a party, Pennsylvania courts may amend a

judgment to reassess damages to include attorneys' fees and costs where such fees and costs are

---

[3] Under Massachusetts law, entry of judgment or issuance of an execution in the Nantucket Enforcement Action
would not operate to merge with or supersede the Pennsylvania Judgment whether domesticated under the
Massachusetts Uniform Enforcement of Foreign Judgments Act or in a separate action to enforce the judgment.  *See,
e.g.,* Mass. Gen. Laws ch. 218, § 4A; *Berg v. Ciampa*, 180 N.E.3d 1010, 1013 (Mass. App. Ct. 2021) (noting that the
UEFJ "does not preclude other available remedies for a judgment creditor, provided that the creditor does not seek
duplicative relief."); *Moore v. Justs. of Mun. Ct. of City of Bos.*, 197 N.E. 487, 488 (Mass. 1935) (original
Massachusetts judgment not merged with subsequent action upon the judgment in Maine).

contractually provided and contemplated to survive a judgment. *See In re Cohen-Harvin*, 571 B.R. 672, 675–76 (Bankr. E.D. Pa. 2017); s*ee also Biddle*, 114 A.3d at 1068 (recognizing trial court's inherent authority to reassess judgment, but reversing on interpretation of mortgage provision). Where a Pennsylvania court judgment could be reassessed to include post-judgment attorneys' fees, a bankruptcy court may do the same and approve such fees as a claim against the estate. *See, e.g., In re Cohen-Harvin*, 571 B.R. at 677 ("The bankruptcy court is not modifying a state court judgment by allowing a claim that includes amounts that could be added to a state court judgment through reassessment.") (citing *In re Rorie*, 98 B.R. 215, 220 (Bankr. E.D. Pa. 1989)); *In re Presque Isle Apts.*, 112 B.R. 744, 747 (Bankr. W.D. Pa. 1990).

Here, the Promissory Note provides for the payment of "reasonable costs of collection including reasonable attorney's fees" . . . "[i]n the event the Promissory Note is placed in the hands of an attorney or attorneys for the enforcement of any obligation set forth herein."[4] The Driscolls argue that this clause entitles them to recover attorneys' fees incurred in the enforcement of the payment obligations under the note, even after the entry of judgment.[5] The Debtor contends that the doctrine of merger precludes the recovery of post-judgment attorneys' fees, as the judgment entered in the Pennsylvania Action did not include such fees and the language of the Promissory Note does not clearly evidence an intent to preserve the right to attorneys' fees post-judgment. The Debtor further asserts that the "confession of judgment" provision in the Promissory Note provides for attorneys' fees in the amount of 5% of unpaid amounts to be included in any confessed judgment. This provision, according to the Debtor,

---

[4] The full provision is: "COLLECTION COST. In the event this Promissory Note is placed in the hands of an attorney or attorneys for the enforcement of any obligation set forth herein, Borrower agrees to pay, in addition to principal and interest, reasonable costs of collection including reasonable attorney's fees."

[5] I will refer to the "Driscolls" while recognizing that the record appears to demonstrate that the Pennsylvania Judgment was entered in favor of Robert Driscoll. This distinction is not relevant to this ruling.

conflicts with the "collection cost" provision and belies any position that the Promissory Note clearly contemplated that post-judgment legal costs would survive a judgment. In addition to the Debtor's argument that there was no clear intent for an attorneys' fees provision to survive merger with a judgment, the Debtor argues that the remedy selected by the Driscolls to seek judgment based on the "confession of judgment" provision in the Promissory Note now precludes the Driscolls from seeking post-judgment legal fees and costs because it exceeds the amount confessed and provided in that judgment.[6]

Courts have considered reassessment or survival of obligations in the context of a mortgage foreclosure, which, under Pennsylvania law, appears to require a judicial process resulting in a final judgment. These courts have held that the terms of a mortgage are merged into a foreclosure judgment and, thereafter, no longer provide the basis for determining the obligations of the parties. *See, e.g., In re Stendardo*, 991 F.2d at 1094; *In re Presque Isle Apartments,* 112 B.R. at 747; *In re Herbert*, 86 B.R. 433, 436 (Bankr. E.D. Pa. 1988) ("The Debtor is, in our view, correct in her assertion that 'the mortgage is merged in a judgment entered in a mortgage foreclosure action' in Pennsylvania.") (quoting 25 P.L.E. 85 (1960)) (citing *Murray v. Weigle*, 11 A. 781, 782 (Pa. 1888)); *Hartman v. Ogborn*, 54 Pa. 120, 122-23 (1867).

When considering the contractual exception to the merger doctrine in the context of a mortgage foreclosure, courts have scrutinized language in different contexts, but have found that provisions may survive merger with a judgment <u>both</u> where expressly stated or implied in underlying agreements. For example, in *Biddle*, an appeals court ruled that post-judgment

---

[6] The provision states: "CONFESSION OF JUDGMENT. Borrower (and each of them, if more than one) hereby irrevocably authorizes the Prothonotary or any attorney of any court of record in Pennsylvania or elsewhere to appear for and confess judgment against Borrower (and each of them if more than one) for any and all amounts unpaid on this Promissory Note, including interest thereon to date of payment together with fees of counsel in the amount five percent (5%) of the foregoing and costs of suit . . . ."

7

interest would accrue at the contract rate rather than the judgment rate where a mortgage expressly provided that the interest provision would survive merger with a foreclosure judgment. 114 A.3d at 1071 (the mortgage provided that "the interest rate payable after a judgment is entered on the [n]ote or in an action of mortgage foreclosure shall be the rate payable from time to time under the [n]ote.").  In that same case, the court considered language regarding payment of attorneys' fees that was less explicit and still determined that that language "clearly and unambiguously" evidenced the parties' agreement that post-judgment attorneys' fees incurred in the foreclosure process were intended to survive merger of the mortgage with the foreclosure judgment:

> In construing the plain meaning of the mortgage, we note that paragraph 18 clearly and unambiguously states that EMC is "entitled to collect all expenses incurred in pursuing the remedies [of a foreclosure action], including, but not limited to, attorneys' fees and costs of title evidence." (emphasis added). We read this provision to mean that recoverable expenses include those that are necessary to the pursuit of the foreclosure action. The types of recoverable expenses that are expressly identified in paragraph 18 support this interpretation, *i.e.* attorneys' fees and costs of title evidence. Thus, it was not error for the trial court to grant attorneys' fees and costs of title as those expenses survived the judgment under the plain terms of the parties' security agreement.

*Id.* at 1068.  Other courts have relied on language in ancillary agreements to hold that continuing obligations survived a judgment.  *See, e.g., In re Clark & Grind Polish, Inc.*, 137 B.R. 172, 174 (Bankr. W.D. Pa. 1992) (finding that language in an asset purchase agreement and promissory note providing for payment of the "*costs of suit and an attorney's commission for collection of the total indebtedness*" did not merge with a foreclosure judgment on a related mortgage) (alteration in original); *see also In re Stendardo*, 991 F.2d at 1097 (distinguishing *Clark* on the basis that other agreements provided an independent basis for the collection of post-judgment attorneys' fees and costs).

8

The Debtor relies on *In re Stendardo,* in which the Third Circuit Court of Appeals considered the contractual exception to the merger doctrine in the context of an effort by a mortgage holder to collect certain post-judgment expenses.  In that case, the court considered language almost identical to that relied on by the *Clark* court and observed:

> Despite the similarity of language, *Clark* is distinguishable from the present case. The creditor in *Clark* obtained a confessed judgment on the promissory note. Notwithstanding the judgment, the mortgage and asset purchase agreement independently provided for the creditor's recoupment of attorneys' fees and costs. The confessed judgment on the promissory note did not extinguish the independent provisions of the mortgage and asset purchase agreement.
>
> In the present case, FNMA obtained a default judgment in foreclosure on the Mortgage itself. FNMA argues that "the provisions of the Mortgage which allow FNMA to add the Post–Judgment Expenses to its secured claim are incorporated into FNMA's Note which arguably survives merger as well." Brief for Appellant at 32 n. 10 (citing App. at 57). The Note and the Mortgage, "although separate and distinct instruments, are securities for one and the same debt." 2 Ladner on Conveyancing in Pennsylvania § 12.01, at 4 (John Makdisi ed., rev. 4th ed. 1979). A mortgagee is not limited to a single remedy upon default, but he cannot recover, in the aggregate, more than he is owed. Id. § 12.09(f), at 18. Here, FNMA admits that the value of the Property is at least $7,000.00 greater than FNMA's secured claim, including the Post–Judgment Expenses. To decide that the Mortgage, but not the Note, merged with the Judgment would enable FNMA to obtain double recovery by execution on the Judgment in foreclosure, followed by execution on the Judgment obtained on the Note securing or evidencing the same debt as the Mortgage.
>
> FNMA's argument also ignores the fact that the Mortgage ceased to exist when judgment was entered. **Thus, even if the Note had survived the merger, there would be no Mortgage terms remaining for incorporation in the Note. Unlike the mortgage in Clark, the Note here does not independently provide for the Debtors' obligation to pay the Post–Judgment Expenses. This Court agrees with the district court's holding that the terms of the Mortgage did not, as a matter of law, indicate the parties' intent that the Debtors pay the Post–Judgment Expenses.** Thus, because the Mortgage merged into the Judgment, FNMA may not recover its Post–Judgment Expenses for taxes and insurance from the Debtors.

*Id.* (emphasis added).

The decision seems to suggest that the *Stendardo* court considered the language of the specific provision in coming to its determination - in addition to distinguishing *Clark* on the

9

basis that *Clark* relied on ancillary agreements.   *Cf. In re Bernadin*, 609 B.R. 26, 39–40 (Bankr.

E.D. Pa.), opinion vacated in part on reconsideration, 610 B.R. 787 (Bankr. E.D. Pa. 2019)

(examining the differences in relevant language in the applicable contracts in *Biddle* and

*Stendardo*).

Here, I must determine whether the language of the Promissory Note executed by the

Debtor "clearly evidences [the parties'] intent to preserve the effectiveness of [the attorneys'

fees] provision post-judgment." *In re Stendardo*, 991 F.2d at 1095.  Again, the Promissory Note

provides that the Debtor is obligated to pay "reasonable costs of collection including reasonable

attorney's fees" . . . "[i]n the event the Promissory Note is placed in the hands of an attorney or

attorneys for the enforcement of any obligation set forth herein."  The Driscolls assert that "any

obligation set forth herein" includes the Debtor's obligation to pay the amounts loaned with

interest and evidences the parties' intent that the Debtor's obligation to pay attorneys' fees

incurred post-judgment to collect principal and interest would survive merger with the

Pennsylvania Judgment.  The Debtor takes the opposite position, presumably that the obligations

under the Promissory Note have been enforced - resulting in the Pennsylvania Judgment.

In determining that a borrower's obligations under a mortgage to pay real estate taxes and

insurance merged into a foreclosure judgment and were no longer enforceable, the *Stendardo*

court observed:

> Although the Mortgage clearly obliges the Debtors to pay the taxes and insurance
> premiums at issue, it lacks any language indicating that this obligation is to survive
> foreclosure. The parties could have easily included such a provision in the
> Mortgage had this been their intent. As written, the Mortgage is unambiguous. It
> does not require the Debtors to pay real estate taxes and insurance premiums
> following the merger of the Mortgage into the Judgment.

991 F.2d at 1095–96.

10

In contrast, the *Biddle* court found clear intent that a provision requiring payment of certain post-foreclosure judgment fees and costs would survive merger:

> In construing the plain meaning of the mortgage, we note that paragraph 18 clearly and unambiguously states that EMC is "entitled to collect all expenses incurred in pursuing the remedies [of a foreclosure action], including, but not limited to, attorneys' fees and costs of title evidence." (emphasis added). We read this provision to mean that recoverable expenses include those that are necessary to the pursuit of the foreclosure action. The types of recoverable expenses that are expressly identified in paragraph 18 support this interpretation, i.e. attorneys' fees and costs of title evidence. Thus, it was not error for the trial court to grant attorneys' fees and costs of title as those expenses survived the judgment under the plain terms of the parties' security agreement.

114 A.3d at 1068.

While *Biddle* might be read to conflict with *Stendardo* in that the language of applicable contractual provisions was very similar, one court has focused on the language differences to explain the different outcomes:

> The different outcomes are due to differences in the relevant language of the provisions of the documents being construed by the court, not an irreconcilable conflict in the legal standards being applied.
>
> The *Stendardo* mortgage described the remedy for default as the right to proceed to judgment and execution to recover "said" principal, interest and advances for taxes, water and insurance. The Third Circuit read that phrase to refer back to the phrase "default . . . in the payment of any installment . . . or any monthly payment." Thus, the right to recover referenced in this provision is the right to recover amounts included in the pre-judgment default. Hence, the Court thus concluded that the mortgage "lacks any language indicating that this obligation is to survive foreclosure." 991 F.2d at 1096.
>
> The language in the mortgage in *Biddle* is different. The *Biddle* mortgage refers to the right to recover "expenses incurred" in pursuing the Section 22 remedies, rather than the recovery of sums related to the pre-judgment default, as in *Stendardo*. In short, different mortgage provisions, different text -- no conflict between the cases.

*In re Bernadin*, 609 B.R. at 40.

11

The contractual exception to the merger doctrine under Pennsylvania law most often appears to involve language similar or identical to the language construed by the *Biddle* court in cases involving foreclosure judgments. *See TD Bank, N.A. v. Massengill*, No. 3047 EDA 2023, 2025 WL 1330285, at *6-7 (Pa. Super. Ct. May 7, 2025), re-argument dismissed (June 3, 2025); *see also In re Bernadin*, 609 B.R. at 39–41; *In re Culler*, 584 B.R. 516, 520–22 (Bankr. E.D. Pa. 2018); *In re Cohen-Harvin*, 571 B.R. at 679–80. In those cases, courts have followed *Biddle* and determined that post-foreclosure judgment attorneys' fees relating to the foreclosure process and remedies specified in the provision survive merger with the judgment. *Id.* As noted above, some of these cases rule this way even where other provisions in the mortgage expressly address survival. *See Biddle*, 114 A.3d at 1071; *Massengill*, 2025 WL 1330285, at *6-7; *In re Bernadin*, 609 B.R. at 40–41; *In re Culler*, 584 B.R. at 521–22.

While less than clear, I view the language in the Promissory Note to be closer to the language in *Stendardo* than *Biddle*, in that it creates an obligation under the Promissory Note to pay legal costs to enforce all obligations under the Promissory Note, including the right to payment - rather than the right to collect legal costs incident to a specific remedy such as foreclosure where those costs would necessarily be incurred after a judgment had entered. I do not view the "any obligation set forth herein" language to clearly evidence an intent on the part of the parties that the attorneys' fees provision would survive merger with a judgment on the Promissory Note. While not necessarily dispositive, "the parties could have easily included [an express provision that post-judgment legal costs would survive merger with a judgment] had this been their intent." *In re Stendardo*, 991 F.2d at 1095–096. The Driscolls do not cite controlling or persuasive authority interpreting Pennsylvania law holding that similar language regarding legal fees incurred enforcing all obligations under such an agreement evidenced clear intent that

12

such a provision would survive merger with a judgment.  As discussed, the cases cited involve ruling where other agreements provided an independent basis for recovery or where courts have enforced the *Biddle* interpretation of language in mortgages regarding foreclosure remedies.

The "confession of judgment clause," which provides for a recovery of attorneys' fees based on 5% of unpaid amounts due under the Promissory Note, is further evidence that the parties did not clearly and unambiguously reach an agreement that the broader "collection costs" provision would survive merger with a confessed judgment.  It is not clear whether that provision should be read to provide an independent remedy, a cap on fees, or an election of remedy.  The fact that those issues are presented supports the ruling that the "collection costs" provision does not evidence a clear and unambiguous agreement that an obligation to pay legal costs were intended to survive merger with a judgment.  The Driscolls obtained judgment based on the "confession of judgment clause."  That provision has an attorneys' fees provision that does not contemplate collection of future enforcement fees and expenses. While the Driscolls assert that the other "collection costs" provision can be read to be an additional remedy, that is not clear - and the provision, itself, does not express a clear intent that costs to enforce a judgment would survive a merger with the judgment.

As such, in my assessment, the Driscolls would not be permitted to amend the Pennsylvania Judgment under Pennsylvania law, and the Objection must be sustained because the Promissory Note has merged with the Pennsylvania Judgment. *See Lance v. Mann*, 60 A.2d 35, 36 (Pa. 1948).

III.    Conclusion

For the reasons above, the attorneys' fees provision of the Promissory Note does not fall within the contractual exception to the Pennsylvania merger doctrine.  As such, the Objection is

sustained as provided herein and the Claim is allowed in the amount stated in the execution

issued in the Nantucket Enforcement Action, plus interest at the Pennsylvania judgment rate

from that date to the petition date.  The Debtor does not appear to object to the Claim being

allowed as a secured claim.  Because the value of the judgment lien in favor of Robert Driscoll

resulting from the levy on 1 Ticona Way, Nantucket, Massachusetts appears to substantially

exceed the amount of the claim, the Driscolls are also entitled to postpetition interest at the

Pennsylvania judgment rate under 11 U.S.C. § 506(b).[7]  Because of my ruling, I do not reach and

need not rule on the reasonableness of the post-judgment fees that have been disallowed by this

Order or any allocation issues that have been raised.


Dated:  March 31, 2026                           By the Court,



                                                 _____
                                                 Christopher J. Panos
                                                 United States Bankruptcy Judge


---

[7] The Debtor notes in his pleadings that the Driscolls levied execution in the Nantucket enforcement action within 90 days of the Debtor filing his chapter 7 petition.  ECF No. 40, ¶ 22.  The Debtor has also claimed a homestead exemption in the 1 Ticona Way property.  The Objection did not address the timing of recording the levy to the objection, and, as of this date, the Debtor has not sought to avoid any lien as a preference or as impairing a claimed exemption.